LOTTINGER, Judge.
This is a suit for a declaratory judgment seeking to have Act. 415 of 1960 (R.S. 33 :- 4301-4308) declared unconstitutional. The Trial Judge favored us with written reasons for judgment which we believe clearly set forth the facts involved, and we quote from those reasons the following:
“The Louisiana Power and Light Company obtained a franchise from the Parish of St. Tammany to lay gas lines and furnish gas services Parishwide on the 17th day of March, 1955, for a period of fifty years with right to excavate and lay pipe and remove same along roads, highways, streets, etc. of the Parish, which franchise in due course was transferred to the Louisiana Gas Service Company, the plaintiff herein. The defendant, St. Tammany Gas Utility District No. 1 of St. Tammany Parish was created by an ordinance of the *306 Police Jury on June 18, 1964, under Revised Statutes 33:4301-4308 or Act. No. 415 of 1960 for the purpose of constructing a natural gas transmission and distribution system. The territory covered by this Ordinance was Wards 5 and 6. The plaintiff, Louisiana Gas Service Company, did not protest the action of the Police Jury of June 18, 1964.
On October 5, 1964 the Police Jury extended the gas district of the defendant to include Ward 2 and parts of Ward 3 and 10. The present suit was filed December 4, 1964 seeking judgment in favor of the Louisiana Gas Service Company, the plaintiff, and against the defendant, the St. Tammany Gas Utility District No. 1, the Parish of St. Tammany and the State of Louisiana declaring Sub-paragraph E, Part 1, Chapter 10, Title 33, Louisiana Revised Statutes of 1950 (R.S. 33:4301-4308) being Act 415 of 1960 unconstitutional and declaring Ordinance No. 352, 350 and 369 of the Police Jury of St. Tammany Parish, Louisiana unconstitutional and that St. Tammany Gas Utility District No. 1, St. Tammany Parish, Louisiana is illegally created and that all actions taken by and on behalf of said St. Tammany Gas Utility District No. 1 are without effect.
After the amended ordinance of October 15, 1964 extending the gas district, the plaintiff was stimulated into action and stepped up its activity in serving new and additional customers and extending its lines.
The defendants filed a plea of estoppel on February 1, 1965 setting up that the gas district was properly and legally created by the resolution of the Police Jury adopted on June 18, 1964 after notice and hearing in accordance with the provisions of the above cited law and Article XIV, Section 14 of the Constitution of Louisiana, that the plaintiff received a notice and had actual knowledge of the hearing and that the Police Jury would hear all objections and pass upon the same but that the Louisiana Gas Service Company made no appearance and filed no protest to the creation of the District, thereby waiving any right to thereafter protest. At the same time, February 1, 1965 the exception of no cause and no right of action was filed in that it claims a perpetual franchise and privilege, etc. and that the principal contention of the plaintiff is that the law and the Ordinances are unconstitutional, that Article XIV, Section 14 and particularly Article XIV, Section 14(m) provides the authorization for the action of the Police Jury in creating the gas district, that the district was validly created under the provisions of Act 415 of 1960, that the Police Jury’s action is final and conclusive, made after a hearing, that the provisions of Act 415 of 1960 or R.S. 33:4301 requiring consent of a gas utility company is merely a directory and not mandatory and is not intended to provide private utility company veto power over the official acts of the Police Jury and in the alternative the Act only requires consent as to areas actually being served by a gas utility company and that the right to protest must be preceded by such service; that the consent of the plaintiff was not required and it had no right to protest the creation of the district until the service was being provided within the area affected.
On the same day, February 1, 1965, the Gas District, the defendants, filed an answer denying substantially the allegations of the plaintiff also setting up the facts alleged or plead in the exceptions referred to above and in recon-vention sets out that the franchise of plaintiff is void, that since the filing of the suit the plaintiff is void, that since the filing of the suit the plaintiff has commenced to lay pipes, mains and connections within the area over which *307 the District has authority and jurisdiction and that as a result the Gas District will continue to suffer irreparable damage and injury and the ability of the District to perform its public functions will be impaired, if not completely destroyed, if the Company is allowed to extend its facilities and services into the area over which the District has authority and jurisdiction and prays for judgment in favor of the Gas District as plaintiff in reconvention, declaring the franchise granted by the Police Jury of the Parish of St. Tammany on the 17th day of March, 1955 of the Louisiana Power and Light Company to be null, void and of no effect and in contravention of Article XIII, Section 7 of the Louisiana Constitution and further praying that the plaintiff, Louisiana Gas Service Company, permanently be enjoined and prohibited from laying these lines, mains, connections and from extending or attempting to extend its facilities and services into the area within the boundaries of St. Tammany Gas Utility District No. 1.”
After a trial on the merits, the Trial Court entered judgment in favor of the defendants, St. Tammany Gas Utility District No. 1 of St. Tammany Parish, Louisiana, and the Police Jury of the Parish of St. Tammany, Louisiana, and against the plaintiff, Louisiana Gas Service Company, and dismissing the plaintiff’s action at plaintiff’s costs. The judgment further granted judgment in the favor of plaintiff and against the defendants decreeing that the franchise of the Louisiana Gas Service Company granted to them on March 17, 1955, by the Police Jury of the Parish of St. Tammany to be valid. In addition, the Court rendered judgment in favor of the defendants and against the plaintiff decreeing that the provisions of Act 415 of 1960 or R.S. 33:4301-4308 were constitutional. The judgment then went on to find that the acts of the plaintiff complained of in the reconventional demand filed by the defendant were injurious to the defendant and in impairment of their rights, and accordingly, the Court granted judgment in favor of the defendants and against the plaintiff enjoining and restraining the plaintiff from extending its lines into the area of St. Tammany Gas Utility District No. 1 without authorization by St. Tammany Gas Utility District No. 1 of the Parish of St. Tammany, Louisiana. This judgment was rendered on April 12, 1965, and was read and signed in Open Court on May 10, 1965. It is from this judgment that the Plaintiff-appellant perfected this appeal.
Appellant’s brief contains several distinct points of argument which we shall treat separately, the first of which is to the effect that the Trial Court erred in holding R.S. 33 :4301-4308 and ordinances numbers 352, 350 and 369 of the Police Jury of St. Tammany Parish, Louisiana to be constitutional. This plea of unconstitutionality leveled at this particular section of the Revised Statutes and of the ordinances of the Police Jury of St. Tammany Parish is based upon appellant’s premise that Act 415 of 1960 (R.S. 33:4301-4308) was in the nature of enabling legislation and that it depended for its existence on the adoption of Act 625 of 1960 by the electorate as a constitutional amendment. Act 625 was in fact rejected by the electorate. Since Act 415 does not contain any provision which predicates its existence or validity on Act 625, plaintiff therefore further develops its argument, necessarily, by the statement that the Legislature did not have the authority to grant the Police Juries of the several parishes the power to create gas utility districts which in turn were given the right to issue bonds. They further sought to bolster to this argument by quoting that portion of Act 625 which validates and confirms any laws or law enacted by the Legislature for the purpose of putting Act 625 into effect, specifically citing whatever laws may have been passed at the same legislative session at which Act 625 was passed. This section of Act 625, likewise purports to confirm all proceedings which may have been had pursuant to such other law or laws for the *308 purpose of creating gas utility districts and the authorization of bonds hy such districts. Act 415 contains no reference whatsoever to Act 625, and purports to stand on its own merits as an act of the Legislature.
We believe that this argument advanced hy appellant resolves itself into the question of whether or not the Legislature is vested with the power to delegate to the several Police Juries the right and power to create gas utility districts in the absence of .a constitutional amendment which confirms that power. In this case, as aforesaid, we have such a Legislative act, which, by its own terms, is completely independent of any constitutional amendment. We further have a proposed constitutional amendment which contains a clause validating and confirming all legislative acts relative to creation of gas utility districts. We believe this question to have been previously settled by the Supreme Court of the State of Louisiana in the case of Middleton v. Police Jury, 169 La. 458, 125 So. 447. In that matter, it was contended that Act 343 of 1926 was illegal and without effect because of a proviso contained therein that the act should not take effect unless the resolution proposing an amendment to Article XIV Section 14 of the Constitution was adopted. It was further contended that the proposed amendment to the Constitution was not effectively adopted, inasmuch as a later proposed amendment omitted water works districts from the enumeration of subdivisions of the State. The Court held that there was no conflict between the two amendments, and that they should be construed together, and that the proposed amendment which specifically enumerated water works districts had been adopted. The Court stated that if the proposed amendment in which water works districts was mentioned had failed, then there would have been no legislative authority for the creation of water works districts by the Police Jury because of the proviso in Act 343 making the act dependent upon the adoption of the proposed constitutional amendment. In discussing the case, the Supreme Court said the following, which we believe correctly disposes of the issue presented hy this argument:
“We do not mean to say that the Legislature could not have authorized the police juries to create water works districts without constitutional authority, since the authority of the Legislature is supreme, except where restrained by the state or federal Constitution.”
“But Act No. 343 did not confer such authority on the police juries without reservation, but conferred it only in the event the first amendment was adopted and became effective.”
We believe that this statement on the part of the Supreme Court correctly establishes the law with reference to conflicts which arise between the power and authority of the Legislature as opposed to the State and Federal constitutions. It is the purpose and intent, in a constitutional form of government, to, in some instances, employ the framework of the State Constitution to establish limits for all branches of government, executive, legislative and judicial. These limits are expressed in the form of constitutional prohibitions of various kinds, some of which relate to only one branch of the government, others' of which are general in nature. So long as the Legislature does not violate and go beyond the limits as established in the Constitution, the Legislature is supreme. The Legislature may, on occasion, as it did in the Middleton case, see fit to enact legislation whose existence and effectiveness is, by the terms of the legislative act itself conditioned upon the approval of the electorate of a constitutional amendment containing the same subject matter as the legislative act. When the Legislature chooses to pursue this course of action, and to include in the legislative act this condition precedent to effectiveness, the Legislature then, in substance, submits to the electorate, in the form of a proposed constitutional amendment, the proposition which it has set forth in its legislative act. This submission to the electorate in the form of *309 constitutional amendment is not required of the Legislature in the instances in which its acts remain within the limits as established by the constitution. It is then rather an optional action on the part of the Legislature.
To hold otherwise would be to take the position that the Legislature prior to the passage of any act whatsoever, would have to go to the Constitution and find therein specific authority for it to enact the legislation which it desires. We do not believe that it is the purpose and intent •of either the State or Federal Constitutions to define in a positive and detailed manner all things which may be done by the Legislature.
Act 415 of 1960 contained no provision making its effectiveness dependent upon the adoption of the constitutional amendment. As a matter of fact, the act contains an affirmative declaration that it is not dependent upon any other law, which statement is couched in the following language :
“This Section shall, without reference to any other statute or law of Louisiana accept the Act of which this Section is a part, constitute full authority for the authorization and issuance of revenue bonds hereunder and no referendum thereon shall be required and no proceedings relating thereto or to the authorization or issuance of such bonds shall be necessary except the adoption of the resolutions herein contemplated and the publication of the resolution authorizing the issuance of the bonds and no other provision of the statutes of Louisiana pertinent to the authorization or issuance of bonds or the adoption or proceedings by governing bodies or requiring the holding of elections or referendums or in anywise impeding or restricting the carrying out of the Act bv this Section authorized to be done shall be construed as applying to any proceedings had or any acts done pursuant to this Section.”
The next argument urged by appellant is that a political subdivision can incur debt only by authority of a constitutional amendment. This argument is amplified by a quotation of subsection (m) of Section 14 of Article XIV of the Constitution, which gives constitutional authority for the issuance of revenue bonds. Appellant argues that the only political subdivisions given authority to issue revenue bonds are municipal corporations and any political subdivision or taxing district authorized to issue bonds under authority of Section 14 of Article XIV. They then argue that the Constitution makes plain that the only political subdivisions who have authority to issue revenue bonds are those named in Section 14, and go on to illustrate that gas utility districts are not named in Section 14.
We might say initially that appellant does not cite nor do we find in the Constitution any prohibition against the issuance by gas utility districts of revenue bonds. Nor do we find a prohibition against the legislature delegating to gas utility districts the authority to issue revenue bonds. Act 415 of 1960 contains the authority for the issuance of revenue bonds by gas utility districts and provides as follows:
“Such bonds shall be payable solely from the income and revenues to be derived from the operation of the properties of the district or from such part of the revenues of such properties as may be pledged thereto. Such bonds shall not constitute an indebtedness or fledge of the general credit of the gas utility district within the meaning of any constifoitional or statutory limitation of indebtedness and shall contain a recital to that effect
In the case of State ex rel. Porterie, Attorney General v. Housing Authority of New Orleans, et al, 190 La. 710, 187 So.2d 725, an attack was made on Act 275 of *310 1936, known as the “Slum Clearance Housing Authority Act”, which act authorized the creation of housing authorities in every city in the state having a population in excess of 20,000 persons. This act further authorized these housing authorities to issue bonds and other obligations and to secure them by mortgage on their real property or by pledge of their revenues. In this suit it was contended that in effect the housing authority was a municipal corporation within the meaning of Article XIV, Section 14 of the Constitution and therefore could issue bonds only in amounts set forth in Sections (a) and (m) of Section 14, Article XIV, and that neither was being complied with. The Supreme Court in that case held that housing authorities were not municipal corporations within the meaning of Article XIV, Sections 14(a) and (m), and further held that such authorities have the power and authority to issue bonds which, under the specific provisions of the act, did not constitute an indebtedness or obligation within the meaning of any constitutional provision or on all fours with the instant case in that this housing authority was neither a municipal corporation nor was it one of the political subdivisions named in Section 14 of Article XIV of the Constitution. The Act which established this housing authority, as did Act 415 of 1960, contained a provision allowing the authority to issue revenue bonds. Accordingly, we do not believe that there is any merit to appellant’s contention that a political subdivision can incur debt only by authority of a constitutional amendment.
Appellant, in the third portion of its argument, sets forth the proposition that Police Juries and Parishes have only limited powers as creatures of the State, with which argument we fully agree. Appellant cites in his brief, the case of State ex rel. Porterie v. Smith, 182 La. 662, 665, 162 So. 413, 420, in which the Supreme Court said:
“Police juries are political corporations to which the sovereign state has delegated a limited portion of its governmental or police powers. Their rights-, and powers are defined by the Legislature and exist only to the extent delegated to them by positive legislation”.
We have quoted this language quoted by appellant in its brief because we feel it to-be relevant to the question at hand.
As an alternative argument, in the event that Act 415 of 1960 is found to be constitutional, the appellant argues that the defendant district was illegally created because of the failure of the Police Jury of' St. Tammany Parish to obtain the consent of plaintiff appellant urges is required by the mandatory provisions of the statute.
We believe that R.S. 33:4301 (Act 415 of 1960) in and of itself clearly refutes this argument advanced by appellant. This statute states in part:
“The governing authorities of the several parishes are authorized and empowered upon their own initiative to divide their respective parishes into one or more gas utility districts * * Any such district may contain within its boundaries all or part of the territory of one or more existing cities, towns or villages, and may overlap other taxing districts or political subdivisions, but shall not be authorized to engage in the operation of any utility hereunder in any existing city, town, village, political subdivision or taxing district which at the time of the creation of such gas utility district is then being served with gas by a gas utility company or is itself engaged in the operation of a like utility without obtaining the consent of the said gas utility company and the city, town, village, subdivision or taxing district * * *.”
We believe that this statute clearly and unequivocally places the burden for obtaining consent on the gas utility district itself after its creation by the governing authority of the parish wherein it is situated. Nowhere in Act 415 of 1960 is the requirement made that the governing authority of the *311 parish obtain the requisite consent from the gas utility company and/or city, town, village, political subdivision or taxing district referred to in R.S. 33:4301.
The record in this case indicates that while the St. Tammany Gas Utility District No. 1, St. Tammany Parish, Louisiana, has in fact been created, that it is not now engaging in the operation of a utility. Therefore, it is not necessary at this point to obtain consent, and the question of consent quoad the gas utility district, per se, is not before us at this time.
The next argument advanced by appellant is that enjoining the exercise of rights under a valid parish wide franchise, constitutes an impairment of contract which is in violation of Article 1, Section Ten, clause 1 in the United States Constitution and Article IV, Section Fifteen of the Louisiana Constitution. This portion of appellant’s argument is based upon that portion of the Trial Judge’s reasons for judgment in which he said:
“The Louisiana Gas Service Company will be enjoined and restrained from extending its lines into the area of the St. Tammany Gas Utility District without further authorization by Act of the Police Jury of St. Tammany Parish.”
The judgment in this matter, as signed, enjoined the Louisiana Gas Service Company “as extending its lines into the area of St. Tammany Gas Utility District No. 1 without authorization by St. Tammany Gas Utility District No. 1 of the Parish of St. Tammany, Louisiana”. The basis, of course, for this argument, is the franchise granted by the Police Jury of the Parish of St. Tammany, Louisiana, to Louisiana Power and Light Company on March 17, 1955, wherein Louisiana Power and Light Company for a period of 50 years was granted the right and privilege to supply natural and/or artificial gas to the Parish of St. Tammany. This franchise was not operative within the limits of any incorporated city, town or village. Louisiana Gas Service Company is the assignee of Louisiana Power and Light Company, as is evidenced by the joint stipulation of counsel contained in this record.
Appellant complains, in essence, that in 1955 its ancestor in title was granted a franchise to operate a gas distribution system in and through the Parish of St. Tammany, Louisiana, by the Police Jury of the Parish of St. Tammany, and that thereafter, after having been given authority by the Legislature to do so, the Police Jury of the Parish of St. Tammany proceeded to create St. Tammany Gas Utility District No. 1 and that this lawsuit has now resulted in appellant having been enjoined by the Trial court from performing those functions which it was franchised to do in 1955 by the Police Jury of St. Tammany Parish.
This situation has arisen before, occasionally in the form of electrical transmission companies who had been granted the right to service property outside of the limits of municipality by the Police Jury with a portion of the property included in the franchise subsequently being included within the limits of an adjoining municipality who wished to service the area with its own electrical service. Such a case was presented in the case of Town of Coushatta v. Valley Electric Membership Corporation, La.App., 139 So.2d 822. The defendant in that case was an electric cooperative which had obtained a franchise from Red River Parish to distribute electricity throughout the Parish but outside of its incorporated municipalities. Certain of its transmission lines were constructed in areas near, but outside of, the town of Coushatta. In 1956, the town extended its municipal limits to include additional areas. In 1960, without the permission or consent of the municipality, the defendant extended its transmission lines to serve a single customer whose property lay completely within one of these annexed areas. The Town and Central Louisiana Electric Company, which held the municipal franchise to distribute elec *312 tricity within the municipality, sought to enjoin the defendant from distributing electricity to any customer within the municipal limits as extended. The majority opinion of the Court on rehearing held that any lines which the defendant might have constructed in areas subsequently annexed could be controlled by the municipality only after expropriation. However, since the line involved had been constructed after the municipal annexation of the property of the single customer served by the line, without the permission or consent of the municipality, the Court granted injunctive relief to the Town to restrain any continuance of that service. We believe the ruling in that case to control the instant case. The defendant district has no authority to enter and begin serving customers in any area which was being serviced by plaintiff at and prior to the time of the creation of the defendant district, without first obtaining the permission or consent of the plaintiff, as is required by R.S. 33 :4301. The district does have the right, in areas not being served by the appellant at the time of the creation of the gas utility district, to permit or refuse to permit service in the area by any other public utility offering to serve natural gas. We believe that appellant’s contention relative to impairment of contract would be correct and accurate had the Trial Judge enjoined appellant from operating in any manner within the limits of St. Tammany Parish, thus taking from appellant the areas which it was already serving by virtue of the franchise previously granted. This is not the case.
Accordingly, the judgment appealed from is affirmed at appellant’s costs.
Judgment affirmed.